And we will hear Blake, Nick Gould, Blake v. State of Connecticut. Good morning, Your Honors. John Boachanis for the plaintiff in this matter. Good morning. This matter arises from the trial court's granting of a summary judgment in an employment discharge matter. Ms. Blake had worked for the State of Connecticut Department of Developmental Services for approximately 13 years. The claims that were raised based on her discharge and addressed in the summary judgment are race-based claims, including retaliatory discharge and hostile work environment. With regard to the retaliatory discharge claim, the trial court in this case, we claim, erred in analyzing the retaliatory discharge claim. The court erroneously had indicated that with regard to one of the incidents in her decision, she indicates that the incident of June of 2000 ---- Please speak into the microphone. Sure. She indicated that the incident of June 2012 had already been reported, investigated, and substantiated prior to the October 2012 filing of a discrimination complaint with the State Agency in Connecticut Commission on Human Rights and Opportunities. But the main problem here is what evidence is there, what evidence have you introduced of any racial bias? Well ---- Fundamentally, you know, you can talk about different things, but what evidence is there that any of the things that happened to your client were based on one of the things that is protected under the federal law? Well, what we claimed and what the record would reflect at summary judgment is that, number one, the plaintiff was African American black. Her supervisor, the director of the facility, was Hispanic. The claim is that with regard to the incident, there was an incident with regard to an alleged patient neglect, that the patient was drinking from a cup without using a table. The supervisor, the record clearly reflects, was Caucasian, was not disciplined. Wait a second. There's no doubt that she violated the standard with regard to that feeding incident, though, is there? Well ---- Is there any doubt about that? No. No. No, so what is the race of the supervisor matter? She was disciplined in accordance with the established procedures. Well, because I believe ---- How do you infer race from that? Sure, because you look at similarly situated individuals. Yes, but the supervisor wasn't similarly situated. Well ---- He wasn't. That person was not in charge of that particular. Maybe that person did something else that was wrong, maybe not, but it wasn't somebody. I mean, if you had had somebody else who was Caucasian, say, or Hispanic, and who had done the same thing, then you'd have some evidence. Well, and I think what I want to point out at the summary judgment stage, what was presented was that the supervisor, with regard to the same incident with the drinking cup not being used from a table, the supervisor was present at the same time that the plaintiff was with regard to the area where this happened. So it's the question of fact that comes up is that you have two individual employees, the plaintiff being African ---- It wasn't the supervisor's job. Well ---- It may mean that the supervisor did something wrong for not doing something that wasn't the supervisor's job, but it wasn't the same thing. Well, I guess that's why I believe the question of fact that a reasonable jury could find that they did have similar duties, and that is the safety and care of the patient at this residential facility for developmentally disabled individuals. So they both did have the same job duties, which of course ---- There's a difference between a generic safety of patients and a specific rule that your client broke. Well ---- The two things are just not the same. I think our ---- Well, not think, but our argument is that in the ---- with regard to that specific incident that these two individual employees had the same duties, even though one is titled the supervisor and the one being the plaintiff, the other being the plaintiff employee has the responsibility for patient services, they both have the ultimate responsibility of patient services. Both were not treated the same, and they were treated differently. With regard to the other incidences, too, that were raised, the judge, our judge with regard to the retaliation claim ignored the fact that with regard to the Loudermill hearing, that although the complaint was filed on October 2012, that was prior to a Loudermill hearing concerning a previous incident. The whole purpose of the Loudermill ---- So that incident was not adjudicated yet by the employer at the State of Connecticut. The trial court disregarded the incident, the first incident where we claim that the second incident where the plaintiff was treated differently and said that, well, there was already a progressive disciplinary process in effect. Our argument and summary judgment is that just because a progressive disciplinary process had started, it had not been decided and the CHRO complaint was filed prior to the Loudermill hearing and we ---- Somehow the result of the hearing then becomes an indices of bias because the process, even though the process was begun before the complaint was filed? Right, and that's the whole purpose of the Loudermill hearing is to give the employee the opportunity. No decision should have been made yet about discipline because the whole purpose of the Loudermill hearing is to ---- When an employer can't discipline an employee that violates the rules and commence a disciplinary proceeding, then the employee files a complaint. The employer can't proceed for fear of retaliation? Well, generally ---- Well, how does the result become an indices of retaliation, though? Well, because at ---- Was it off the charts in terms of the context of what was done? Because what was done here is that at the hearing she was asked to withdraw. So, in other words, the evidence is introduced to show that they had noticed, number one, of an administrative charge against them and, number two, that they raised it at the Loudermill hearing saying, please, you know, to withdraw it. When you sit down, I ask you to read your statement of the case in your brief on page 2. Okay, sure. It's your opening to telling us what you're talking about. It's a cut and paste from a products liability case. It's embarrassing. Oh, okay. I'll note that. It's embarrassing. I'll note that. Thank you. Yeah. Thank you. Thank you. You've retained three minutes. You may proceed. Thank you, Your Honor. Good morning. May it please the Court, my name is Assistant Attorney General Jennifer Bennett, and I represent the APELI in this case, the State of Connecticut Department of Developmental Services. Your Honors, this case is about a former DDS employee, Nicole Blake, who was terminated after she received two successive unsatisfactory performance reviews, resulting from progressive discipline related to three separate cases of substantiated client neglect. The plaintiff, through her actions, put the most vulnerable populations at risk, and DDS had the obligation to address the plaintiff's actions, which it did through three separate independent investigations in utilizing progressive discipline in accordance with the collective bargaining unit, and ultimately deciding to terminate the plaintiff because of her actions. In this case, the plaintiff relies on mere assertions in her affidavit, which at certain points contradict her deposition testimony, and she has presented no concrete evidence of discrimination or retaliation. The district court properly found that no reasonable jury could have found that discrimination or retaliation were the real reasons for any of the actions taken with regards to the plaintiff. And just to briefly address some points that opposing counsel brought up, with regards to the incident of drinking coffee at the table, there is no evidence whatsoever in the record that plaintiff's supervisor either was or was not disciplined. Plaintiff conducted no discovery on that fact. Plaintiff did not request records to that effect. Plaintiff did not depose either, well, anyone in this case. Therefore, there is no evidence in the record whatsoever as to whether or not the supervisor was disciplined. Furthermore, if I point the Court's attention to the record at page A236, the supervisor was not even present when the client was drinking the coffee. She was in the back of the unit cleaning the women's bathroom, so she had no knowledge that the improper positioning at the table was even occurring. With regards to the incident in June of 2012 wherein Ms. Blake received discipline in October of 2012, the investigation into that incident was completed in the summer of 2012, well before any CHRO complaint was filed. And as the district court correctly found, the filing of a CHRO complaint or protected activity cannot cut off an already contemplated course of action that the employer may have with regard to an employee. I have a slightly different question, and that is, even if we assume that a prima facie case was made out in this, you then give an explanation for all the actions which were taken. Was that ever traversed? Was there ever an argument made by the plaintiff that these were pretextual? Because if not, then I believe under our structure that ends the case even if conceding the presence of a prima facie case. It does, Your Honor. Even if we concede that there is some sort of temporal proximity that gets the plaintiff over that hurdle of a prima facie case, the defendant has presented ample legitimate nondiscriminatory reasons for his actions, and there has been no offer of proof, nothing that a reasonable jury could find as reason for pretext for any of the actions taken, whether it be discrimination or retaliation. And if there are no further questions, I will rest on my brief. Thank you. Thank you. Just to follow up with regard to the pretextual aspect of it, it is our contention that with regard to the separate instances which we timelined and charted in the reply brief that she was treated differently, and what the pretextual aspect of it was is that she was treated differently, such as, for example, with regard to the van incident. The other individual in the van, who also had a one-on-one patient but was present in the van, did not. No, but you're saying that the different treatment is enough to demonstrate that the perfectly, otherwise perfectly valid reasons for discipline must have been pretextual. Because there was disparate treatment of employees as to the same incidences that were raised here. So, for example, with the van incident, the other individual in the van was not disciplined. Same thing with the drink being used at the table. That individual employee was not disciplined either. So with regard to if there was a policy that was to be uniformly applied, that it was not, and that as a result it was pretextual in terms of their reasoning, that there was a neutral or that there was a policy. The supervisor wasn't even in the room at the drinking incident. You disagree? Give me a record citation where you can tell me where I can go look. It shows that the supervisor was in the room. I could just say that she was in the unit. She was in charge of the unit. No, I asked you for the room. In the presence? No. Because you've said that this is a, you just offered it as pretext. Now I'm giving you a chance to tell me where in the record I can find that the supervisor was in the proximity of the individual, such that we can say that that supervisor was equally culpable in some way and that this is pretextual because there's a discriminatory animus show. I think I could just point to the affidavit of the plaintiff in which she indicates that the supervisor was in charge of the unit and was supposed to. So she doesn't say that she was present. She was in charge of the unit. Was in charge and present that day of the incident happening. Did you depose the supervisor? The supervisor was, that particular supervisor, that Caucasian supervisor, was not deposed. No, I would say. Thank you. All right. I have nothing further to add. Thank you. Thank you both for the reserved decision.